UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

NURTURING DIRECT HOMECARE INC.
AND A.V. PRO SERVICES INC.,

    Plaintiff,

-against-

ERC SPECIALISTS, LLC,

    Defendant.

**FIRST AMENDED COMPLAINT**

Case No. 1:23-cv-4331

---

The Plaintiffs, NURTURING DIRECT HOMECARE INC. AND A.V. PRO SERVICES INC, by their attorneys Malvina Lin, P.C. complaining of the Defendant respectfully shows and alleges upon information and belief as follows:

## THE PARTIES

1. At all relevant times the Plaintiff NURTURING DIRECT HOMECARE, INC. ("Nurturing") is a duly formed New York Domestic Corporation authorized to conduct business in the State of New York on June 13, 2016.

2. At all relevant times the Plaintiff A.V. PRO SERVICES INC. ("AV Pro") is a duly formed New York Domestic Corporation authorized to conduct business in the State of New York on July 12, 2006.

3. The principal place of business of Nurturing is at 87 West End Avenue, Brooklyn, New York 11235.

4. The principal place of business of AV Pro is at 85 West End Avenue, Brooklyn, New York 11235.

5. At all relevant times Nurturing conducts business in the State of New York as a home health care agency.

6. At all relevant times A.V. Pro conducts business in the State of New York as a home health care agency.

7. At all relevant times and upon information and belief, the Defendant ERC SPECIALISTS, LLC ("ERC") is a duly formed Utah Limited Liability Company authorized to conduct business on May 12, 2021.

8. Upon information and belief, the principal place of business for ERC is 560 E. Timpanogos Circle, Orem, Utah 84097.

9. Upon information and belief, at all relevant times ERC holds itself out as providing services in connection with the filing and receiving tax credits that may be available to companies under the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act").

## JURISDICTION AND VENUE

10. Pursuant to 28 U.S.C. § 1332, this Court has original jurisdiction over this action because the action is between citizens of different states and the amount in controversy exceeds $75,000.00 exclusive of interest and costs.

11. Pursuant to 28 U.S.C. § 1391, venue lies in the Eastern District of New York based upon the fact that it is the judicial district within which a substantial part of the events giving rise to the Plaintiff's claims occurred.

## STATEMENT OF FACTS

12. At all relevant times ERC marketed its services and solicited customers throughout the State of New York.

13. ERC through its authorized representative and agent, Jan Marie Ferriola, appeared at the annual Home Care Providers Conference that occurred at the Hilton Pearl River Hotel located in Pearl River, New York on October 18-20, 2022 for the primary purpose of marketing the services of ERC to New York companies.

14. Marvin Pishchik attended the aforementioned conference on his own initiative and at his own expense independent of his duties and relationship with Nurturing.

15. At all relevant times Nurturing has only two owners of the company.

16. Jeff Paperman is an owner and President of Nurturing and Yury Grobshteyn is an owner and Vice President of Nurturing.

17. Upon information and belief, an individual named Marvin Pishchik acted as an independent consultant to Nurturing due to his education and experience in the health care industry.

18. Upon information and belief, Marvin Pishchik provides consultation and engages regularly in several businesses related to home care agencies and/or the health care industry.

19. At no time was Marvin Pishchik ever an employee, officer, representative or agent of Nurturing.

20. At all relevant times Marvin Pishchik provided consultation services to Nurturing that were limited to advising generally on issues related to the health care industry and advising on human resources and coordination of employees.

21. At no time did Marvin Pishchik hold a position as an officer or an executive with Nurturing.

22. At all relevant times Marvin Pishchik was not authorized to bind Nurturing or enter into any contracts on behalf of Nurturing.

23. At all relevant times Marvin Pishchik did not have a power of attorney to act on behalf of Nurturing.

24. At all relevant times Marvin Pishchik did not have a power of attorney to act on behalf of the owner and President of Nurturing, Jeff Paperman.

25. At all relevant times Marvin Pishchik did not have a power of attorney to act on behalf of the owner and Vice President of Nurturing, Yury Grobshteyn.

26. At all relevant times Marvin Pishchik was not authorized to engage any tax or legal professionals on behalf of Nurturing.

27. Upon information and belief, ERC did solicit Marvin Pishchik and convince him to communicate and engage with ERC through email for the purpose of offering their services to Nurturing and other companies with which Pishchik had a relationship in the healthcare industry.

28. Upon information and belief, Marvin Pishchik had access to the payroll records and other tax documents of Nurturing by virtue of his relationship as an independent contractor of Nurturing.

29. At all relevant times, Marvin Pishchik did not have authority to share or disseminate any financial or tax related information or documents to any party outside of Nurturing.

30. Despite the absence of authority and permission, it appears that, upon information and belief, Marvin Pishchik engaged in communications with representatives of ERC.

31. Subsequent to such communications and on or about April 10, 2023, the Internal Revenue Service sent a notice to Nurturing that in sum and substance Nurturing will be

receiving a credit in the amount of $1,154,679.41 with regard to June 30, 2021 payroll taxes.

32. Nurturing did in fact receive a check from the Internal Revenue Service dated April 11, 2023 which was deposited in a Nurturing account and which will continue to be held until further notice and without prejudice.

33. Subsequent to such communications and on or about May 1, 2023, the Internal Revenue Service sent a notice to Nurturing that in sum and substance Nurturing will be receiving a credit in the amount of $1,242,291.61 with regard to March 31, 2021 payroll taxes.

34. Nurturing did in fact receive a check from the Internal Revenue Service dated May 2, 2023 which was deposited in a Nurturing account and which will continue to be held until further notice and without prejudice.

35. Subsequent to such communications and on or about May 22, 2023, the Internal Revenue Service sent a notice to Nurturing that in sum and substance Nurturing will be receiving a credit in the amount of $1,339,972.57 with regard to September 30, 2021 payroll taxes.

36. Nurturing did in fact receive a check from the Internal Revenue Service dated May 23, 2023 which was deposited in a Nurturing account and which will continue to be held until further notice and without prejudice.

37. The owners/officers of Nurturing were unaware of the basis for this credit when it was received and had not taken any affirmative action to request or obtain this credit.

38. Upon inquiry of all individuals connected to Nurturing by the Vice President Yury Grobshteyn, the consultant Marvin Pishchik admitted that he had taken unilateral action to obtain such credits on behalf of Nurturing.

39. Upon information and belief, Marvin Pishchik admitted to the Vice President that ERC had been provided certain documents and information.

40. Upon information and belief, Marvin Pishchik admitted that he typed the electronic signature of Yury Grobshteyn on a document that purports to be a contract for ERC services as well as on an Internal Revenue Service Form 8821, Tax Information Authorization.

41. Yury Grobshteyn did not agree, authorize or ratify such actions that were taken by Marvin Pishchik.

42. After being confronted by Yury Grobshteyn, Marvin Pishchik provided Yury Grobshteyn with copies of emails and correspondence exchanged with ERC.

43. One of the documents that Marvin Pishchik provided was a purported contract dated February 16, 2023.

44. Yury Grobshteyn never interacted verbally or in writing with ERC or its authorized representative Jan Marie Ferriola.

45. Ms. Ferriola communicated directly with Marvin Pishchik at his email address of marvin@asthomecare.com and addressed "Marvin."

46. Upon information and belief, Marvin Pishchik was promised and intended to collect a referral fee of an unknown amount from ERC due in connection with customers that Marvin Pishchik recommends to ERC.

47. As a result, Marvin Pishchik had an economic incentive to facilitate a transaction between ERC and Nurturing even in the absence of authority and authorization from Nurturing.

48. Yury Grobshteyn never reviewed the February 16, 2023 document, never received this document by electronic means or otherwise directly to him, and never signed this document.

49. The February 16, 2023 document contains terms and conditions that Yury Grobshteyn would never have agreed to on behalf of Nurturing.

50. Upon learning of the aforementioned unauthorized actions, Nurturing promptly repudiated the document in writing by written correspondence on or about April 18, 2023 to ERC and demanded copies of all documents that ERC had submitted to the Internal Revenue Service on behalf of Nurturing.

51. To date, ERC has provided some documents but has failed to provide all such documents to Nurturing.

52. Neither Marvin Pishchik nor ERC are professional accountants, CPAs or tax preparers.

53. Nurturing would never have authorized anyone other than a professional tax preparer with whom they are familiar and/or who has been thoroughly vetted and investigated to request credits on behalf of Nurturing from the Internal Revenue Service.

54. Upon information and belief, the amount of credits that Nurturing has received and may continue to receive carries with it the risk of audit review and exposure.

55. Upon information and belief, the fees charged and other general terms of the purported agreement with ERC are unreasonable and Nurturing would never had agreed to such terms had someone with authority been given the opportunity to review the proposed agreement in advance.

56. Nurturing should have been entitled to evaluate all of the potential risks and benefits of obtaining an employee retention credit including the terms and conditions of any service

provider that assisted with such activity prior to the submission of requests on their behalf to the Internal Revenue Service.

57. Subsequent to Nurturing discovering the unauthorized actions of Marvin Pishchik, it was requested that he forward all of his correspondence with ERC and its representative to Yury Grobshteyn.

58. Marvin Pishchik did in fact forward several email correspondence, and Yury Grobshteyn received access to his email address and had been regularly accessing it for relevant correspondence.

59. On or about May 12, 2023 and May 25, 2023 ERC emailed an invoice for their services demanding the amount of $540,552.87 from Nurturing.

60. At all relevant times AV Pro has only two owners of the company.

61. Yury Grobshteyn is an owner and President of AV Pro and Jeff Paperman is an owner and Vice President of AV Pro.

62. Upon information and belief, an individual named Marvin Pishchik acted as an independent consultant to AV Pro due to his education and experience in the health care industry.

63. Upon information and belief, Marvin Pishchik was employed by AV Pro as an Administrator.

64. Upon information and belief, Marvin Pishchik provides consultation and engages regularly in several businesses related to home care agencies and/or the health care industry.

65. At no time was Marvin Pishchik ever an officer, representative or agent of AV Pro.

66. At all relevant times Marvin Pishchik provided consultation services to AV Pro that were limited to advising generally on issues related to the health care industry and advising on human resources and coordination of employees.

67. At no time did Marvin Pishchik hold a position as an officer or an executive with AV Pro.

68. At all relevant times Marvin Pishchik was not authorized to bind AV Pro or enter into any contracts on behalf of AV Pro.

69. At all relevant times Marvin Pishchik did not have a power of attorney to act on behalf of AV Pro.

70. At all relevant times Marvin Pishchik did not have a power of attorney to act on behalf of the owner and President of AV Pro, Yury Grobshteyn.

71. At all relevant times Marvin Pishchik did not have a power of attorney to act on behalf of the owner and Vice President of AV Pro, Jeff Paperman.

72. At all relevant times Marvin Pishchik was not authorized to engage any tax or legal professionals on behalf of AV Pro.

73. Upon information and belief, ERC did solicit Marvin Pishchik and convince him to communicate and engage with ERC through email for the purpose of offering their services to AV Pro and other companies with which Pishchik had a relationship in the healthcare industry.

74. Upon information and belief, Marvin Pishchik had access to the payroll records and other tax documents of AV Pro by virtue of his relationship as an independent contractor and employee of AV Pro.

75. At all relevant times, Marvin Pishchik did not have authority to share or disseminate any financial or tax related information or documents to any party outside of AV Pro.

76. Despite the absence of authority and permission, it appears that, upon information and belief, Marvin Pishchik engaged in communications with representatives of ERC.

77. Subsequent to such communications and on or about June 19, 2023, the Internal Revenue Service sent a notice to AV Pro that in sum and substance AV Pro will be receiving a credit in the amount of $1,695,090.59 with regard to September 30, 2021 payroll taxes.

78. AV Pro never received the aforementioned check from the Internal Revenue Service.

79. AV Pro inquired with the Internal Revenue Service as to the status of the aforementioned check that was never received and was informed that a check was actually sent out to AV Pro.

80. Upon information and belief, the Internal Revenue Service is currently conducting an investigation into the check to AV Pro in the amount of $1,695,090.59.

81. Subsequent to such communications and on or about July 3, 2023, the Internal Revenue Service sent a notice to AV Pro that in sum and substance AV Pro will be receiving a credit in the amount of $1,407,961.44 with regard to June 30, 2021 payroll taxes.

82. AV Pro did in fact receive a check from the Internal Revenue Service dated July 3, 2023 which was deposited in an AV Pro account and which will continue to be held until further notice and without prejudice.

83. AV Pro received no further notices or checks from the Internal Revenue Service to date.

84. The owners/officers of AV Pro were unaware of the basis for this credit when it was received and had not taken any affirmative action to request or obtain this credit.

85. Upon inquiry of all individuals connected to AV Pro by the President Yury Grobshteyn, the consultant Marvin Pishchik admitted that he had taken unilateral action to obtain such credits on behalf of AV Pro.

86. Upon information and belief, Marvin Pishchik admitted to the President of AV Pro that ERC had been provided certain documents and information.

87. Upon information and belief, Marvin Pishchik admitted that he typed the electronic signature of Yury Grobshteyn on a document that purports to be a contract for ERC services as well as on an Internal Revenue Service Form 8821, Tax Information Authorization.

88. Yury Grobshteyn did not agree, authorize or ratify such actions that were taken by Marvin Pishchik.

89. After being confronted by Yury Grobshteyn, Marvin Pishchik provided Yury Grobshteyn with copies of emails and correspondence exchanged with ERC.

90. One of the documents that Marvin Pishchik provided was a purported contract dated January 19, 2023.

91. Yury Grobshteyn never interacted verbally or in writing with ERC or its authorized representative Jan Marie Ferriola.

92. Ms. Ferriola communicated directly with Marvin Pishchik at his email address of marvin@asthomecare.com and addressed "Marvin."

93. Upon information and belief, Marvin Pishchik was promised and intended to collect a referral fee of an unknown amount from ERC due in connection with customers that Marvin Pishchik recommends to ERC.

94. As a result, Marvin Pishchik had an economic incentive to facilitate a transaction between ERC and AV Pro even in the absence of authority and authorization from AV Pro.

95. Yury Grobshteyn never reviewed the January 19, 2023 document, never received this document by electronic means or otherwise directly to him, and never signed this document.

96. The January 19, 2023 document contains terms and conditions that Yury Grobshteyn would never have agreed to on behalf of AV Pro.

97. Upon learning of the aforementioned unauthorized actions, AV Pro promptly repudiated the document in writing by written correspondence on or about April 18, 2023 to ERC and demanded copies of all documents that ERC had submitted to the Internal Revenue Service on behalf of AV Pro.

98. To date, ERC has provided some documents but has failed to provide all such documents to AV Pro.

99. Neither Marvin Pishchik nor ERC are professional accountants, CPAs or tax preparers.

100. AV Pro would never have authorized anyone other than a professional tax preparer with whom they are familiar and/or who has been thoroughly vetted and investigated to request credits on behalf of AV Pro from the Internal Revenue Service.

101. Upon information and belief, the amount of credits that AV Pro has received and may continue to receive carries with it the risk of audit review and exposure.

102. Upon information and belief, the fees charged and other general terms of the purported agreement with ERC are unreasonable and AV Pro would never had agreed to

such terms had someone with authority been given the opportunity to review the proposed agreement in advance.

103. AV Pro should have been entitled to evaluate all of the potential risks and benefits of obtaining an employee retention credit including the terms and conditions of any service provider that assisted with such activity prior to the submission of requests on their behalf to the Internal Revenue Service.

104. Subsequent to AV Pro discovering the unauthorized actions of Marvin Pishchik, it was requested that he forward all of his correspondence with ERC and its representative to Yury Grobshteyn.

105. Marvin Pishchik did in fact forward several email correspondence, and Yury Grobshteyn received access to his email address and had been regularly accessing it for relevant correspondence.

106. On or about July 20, 2023 and September 18, 2023 ERC emailed an invoice for their services demanding the amount of $617,092.85.

## **FIRST CLAIM FOR RELIEF**

107. By virtue of the fact that the signature on the purported contract with ERC was forged and unauthorized, said contract is *void ab initio*.

108. At all relevant times, ERC through its authorized representative Jan Marie Ferriola was aware that Marvin Pishchik was not authorized to execute contracts on behalf of Nurturing.

109. Due to that knowledge, ERC requested that Marvin Pishchik execute all documents as if he were an authorized signatory when in fact such execution constituted a forgery.

110. A contract that is forged is *void ab initio*.

111. As a result of the foregoing, Plaintiff Nurturing is entitled to a declaration that the purported contract with ERC is void.

112. As a result of the foregoing, Plaintiff Nurturing is entitled to a declaration that any amounts demanded by invoice or otherwise by ERC pursuant to such void contract, to wit, the sum demanded at present being $540,552.87, is null and void and that no amounts are due to ERC from Nurturing.

## SECOND CLAIM FOR RELIEF

113. ERC was not authorized to submit any documents or records or make any requests to the Internal Revenue Service on behalf of Nurturing.

114. As a result of the foregoing, Nurturing will incur fees and expenses at a minimum for the purpose of investigating and retaining the services of professionals to review the purported credits received.

115. Despite due demand in writing, ERC has failed to provide Nurturing duplicate copies of all documents and correspondence that were submitted on behalf of Nurturing without their knowledge or authorization.

116. Nurturing is entitled to a declaration ordering ERC to provide all such documents.

117. In addition, as a result of the foregoing, Nurturing is entitled to a judgment for a sum to be more particularly determined at the time of trial but in excess of the jurisdictional limits of this Court representing the costs and expenses of mitigating any damages caused by ERC's unauthorized actions, including but not limited to attorney's fees, court costs, professional accounting costs, and the costs of any fees or penalties incurred as a result of the credits having been issued by the Internal Revenue Service.

## THIRD CLAIM FOR RELIEF

118. By virtue of the fact that the signature on the purported contract between AV Pro and ERC was forged and unauthorized, said contract is *void ab initio*.

119. At all relevant times, ERC through its authorized representative Jan Marie Ferriola was aware that Marvin Pishchik was not authorized to execute contracts on behalf of AV Pro.

120. Due to that knowledge, ERC requested that Marvin Pishchik execute all documents as if he were an authorized signatory when in fact such execution constituted a forgery.

121. A contract that is forged is *void ab initio*.

122. As a result of the foregoing, Plaintiff AV Pro is entitled to a declaration that the purported contract with ERC is void.

123. As a result of the foregoing, Plaintiff AV Pro is entitled to a declaration that any amounts demanded by invoice or otherwise by ERC pursuant to such void contract, to wit, the sum demanded at present being $617,092.85, is null and void and that no amounts are due to ERC from AV Pro.

## FOURTH CLAIM FOR RELIEF

124. ERC was not authorized to submit any documents or records or make any requests to the Internal Revenue Service on behalf of AV Pro.

125. As a result of the foregoing, AV Pro will incur fees and expenses at a minimum for the purpose of investigating and retaining the services of professionals to review the purported credits received.

126. Despite due demand in writing, ERC has failed to provide AV Pro duplicate copies of all documents and correspondence that were submitted on behalf of AV Pro without their knowledge or authorization.

127. AV Pro is entitled to a declaration ordering ERC to provide all such documents.

128. In addition, as a result of the foregoing, AV Pro is entitled to a judgment for a sum to be more particularly determined at the time of trial but in excess of the jurisdictional limits of this Court representing the costs and expenses of mitigating any damages caused by ERC's unauthorized actions, including but not limited to attorney's fees, court costs, professional accounting costs, and the costs of any fees or penalties incurred as a result of the credits having been issued by the Internal Revenue Service.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

A) A judgment on the First Claim for Relief in favor of Plaintiff Nurturing Direct Homecare Inc. and against Defendant ERC Specialists, LLC declaring that the purported agreement dated February 16, 2023 or any other document between the parties be declared *void ab initio* and that Plaintiff be declared not liable for payment of any invoices to Defendant, including but not limited to an invoice in the amount of $540,552.87 together with an award of all costs and disbursements related to this action;

B) A judgment on the Second Claim for Relief in favor of Plaintiff Nurturing Direct Homecare Inc. and against Defendant ERC Specialists, LLC declaring that Defendant shall turn over any and all documents received in connection with their unauthorized activity on behalf of Plaintiffs, any and all workpapers prepared or used in connection with their unauthorized activity

on behalf of Plaintiffs, and any and all documents submitted to the Internal Revenue Service or any other party purportedly acting on behalf of Plaintiff together with an award of all costs and disbursements related to this action;

C) A judgment on the Second Claim for Relief in favor of Plaintiff Nurturing Direct Homecare Inc. and against Defendant ERC Specialists, LLC in an amount to be more particularly demonstrated at the time of trial but in excess of the jurisdictional limits of this Court representing the costs and expenses of mitigating any damages caused by ERC's unauthorized actions, including but not limited to attorney's fees, court costs, professional accounting costs, and the costs of any fees or penalties incurred as a result of the credits having been issued by the Internal Revenue Service;

D) A judgment on the Third Claim for Relief in favor of Plaintiff A.V. Pro Services Inc. and against Defendant ERC Specialists, LLC declaring that the purported agreement dated January 19, 2023 or any other document between the parties be declared *void ab initio* and that Plaintiff be declared not liable for payment of any invoices to Defendant, including but not limited to an invoice in the amount of $617,092.85 together with an award of all costs and disbursements related to this action;

E) A judgment on the Fourth Claim for Relief in favor of Plaintiff A.V. Pro Services Inc. and against Defendant ERC Specialists, LLC declaring that Defendant shall turn over any and all documents received in connection with their unauthorized activity on behalf of Plaintiffs, any and all workpapers prepared or used in connection with their unauthorized activity on behalf of Plaintiffs, and any and all documents submitted to the Internal Revenue Service or any other party purportedly acting on behalf of Plaintiff together with an award of all costs and disbursements related to this action;

F)  A judgment on the Fourth Claim for Relief in favor of Plaintiff A.V. Pro Services Inc. and against Defendant ERC Specialists, LLC in an amount to be more particularly demonstrated at the time of trial but in excess of the jurisdictional limits of this Court representing the costs and expenses of mitigating any damages caused by ERC's unauthorized actions, including but not limited to attorney's fees, court costs, professional accounting costs, and the costs of any fees or penalties incurred as a result of the credits having been issued by the Internal Revenue Service; and

G)  Such other and further relief as this Court may deem necessary, just and proper.

Dated: October 17, 2023
      Brooklyn, New York

                                        Respectfully submitted,
                                        MALVINA LIN, P.C.

*Malvina Lin*

Malvina Lin, Esq.
1203 Avenue J, Suite 4B
Brooklyn, New York 11230
Tel: (718) 377-3500
Fax: (718) 377-4174
malvina@malvinalaw.com

*Attorneys for Plaintiffs*
*Nurturing Direct Homecare Inc. and*
*A.V. Pro Services, Inc.*